MARIANA GINÉS ET AL., Plaintiffs and Appellants, *v.* CLEMENTE AYALA RODRÍGUEZ ET AL., Defendants and Appellees.

No. 11888. Decided December 21, 1961.

*Valentín Polanco de Jesús* for appellants. *Francisco M. Cadilla, E. Pérez Casalduc*, and *José E. Díaz* for appellees.

JUDGMENT

José Ayala Rodríguez lived in concubinage with Mariana Ginés from 1921 to February 2, 1945, the date of his death.

On May 9, 1941, by public deed No. 38 executed before Notary José E. Díaz, the said José Ayala Rodríguez adopted minor Luis Norberto Ayala with the previous consent of his parents and subsequent ratification of the former District Court of Arecibo. Upon the death of José Ayala Rodríguez, his mother, Josefa Rodríguez Espino, was declared sole and universal intestate heir of her son, José Ayala Rodríguez, by the former District Court of Arecibo. Upon the death of Josefa Rodríguez Espino on June 24, 1945, her children and grandchildren, defendants-appellees herein, were declared her heirs.

On October 2, 1952, the plaintiffs-appellants, Mariana Ginés and Luis Norberto Ayala, filed this civil action in the Superior Court, Arecibo Part, for recognition of their respective rights in the actual partnership created by the concubinage and by virtue of the adoption by the first predecessor in interest.

On February 23, 1955, the trial judge recognized the actual partnership created by the concubinage, but concluded that the labor María Ginés could have performed to aid her paramour, José Ayala Rodríguez, had been offset by the property which he recorded in her name when he purchased it from his brother [sic] Miguel and by the share corresponding to her in the price of two urban properties situated in Manatí. As respects the adopted child, he held that he had the right only to the estate left upon the adopter's death provided it did not prejudice the rights of the forced heirs, and that since upon the adopter's death there was a forced heir, his mother Josefa Rodríguez Espino, the adopted child did not inherit anything.

In their petition for review the plaintiffs assign two errors: (1) error of law in declaring that Luis Norberto Ayala, as adopted child, had no right to inherit from his father, José Ayala Rodríguez, and (2) in declaring that the

share of Mariana Ginés had been paid with the property which was previously delivered to her.

1. As respects the adopted child, there is no question that the trial judge relied on our decision in the case of *Ex parte Lugo*, 64 P.R.R. 826 (1945), without being aware that in a subsequent case—*Sosa* v. *Sosa*, 66 P.R.R. 573 (1946) —we held that that case had been erroneously decided (at 584). Therefore, applying the principle of the case of *Sosa* v. *Sosa*, *supra*, to the effect that the adopted child may concur with other forced heirs but without prejudice to the legal portion of the forced heirs, in the event the adopted child concurs with the adopter's mother, the latter is entitled to one half of the estate and the adopted child to the other half.

2. As respects the concubine, although the trial judge recognized to concubine Mariana Ginés certain rights in the liquidation of the actual partnership constituted with José Rodríguez Ayala, we believe that her share in the partnership was arbitrarily computed, without a direct relation with the corpus of the property acquired during the partnership: *Torres* v. *Roldán*, 67 P.R.R. 342 (1947); *Danz* v. *Suau*, 82 P.R.R. 591 (1961). If the trial judge believes that the evidence before him is not sufficient to carry out the liquidation of the said partnership, he may summon the parties for a new hearing on the latter question.

For the reasons stated, the judgment rendered by the Superior Court of Puerto Rico, Arecibo Part, on February 23, 1955, is reversed, and Luis Norberto Ayala, as adopted child of José Ayala Rodríguez, is declared heir of one half of the property left by the adopter, annulling the respective declarations of heirship of August 24, 1945 and December 5, 1945, and the case is remanded to the trial court for reliquidation of the partnership actually existing between José Ayala Rodríguez and Mariana Ginés, pursuant to the reasoning herein.

It was so decreed by the Court as witnesses the signature of the Chief Justice. Mr. Justice Belaval, in a separate opinion in which Mr. Justice Santana Becerra concurs, dissents from that part of the judgment which declares the adopted child to be the heir of one half of the estate, in the belief that the adopted child is entitled to the entire estate. Mr. Justice Santana Becerra also dissented in a separate opinion.

(s) LUIS NEGRÓN FERNÁNDEZ
*Chief Justice*

I attest:

(s) IGNACIO RIVERA
*General Secretary*

---

MR. JUSTICE BELAVAL, with whom MR. JUSTICE SANTANA BECERRA concurs, dissenting.

In 1921, José Ayala Rodríguez, while married to Brígida Acevedo, lived in concubinage with Mariana Ginés who at that time was an adolescent 15 years old. Subsequently, late in 1926, José Ayala Rodríguez divorced his wife Brígida Acevedo and upon liquidation of the community partnership, two urban properties in the town of Manatí were adjudicated to him, as it appears from deed No. 71 of liquidation and partition of community property, executed on August 16, 1927 before Notary José E. Díaz. José Ayala Rodríguez continued to live with his concubine Mariana Ginés until his death. The trial court concluded: "That, notwithstanding the absence of agreement between them for the partition of the property acquired during the concubinage, Mariana Ginés, in addition to performing the duties incidental to her status of concubine, also contributed from time to time with other labor of less importance which in some way helped José Ayala Rodríguez in the operation of his business."

By deed No. 38 of May 9, 1941 executed before Notary José E. Díaz, of Manatí, Puerto Rico, José Ayala Rodríguez, of full age, divorced, a farmer, and a resident of Manatí, adopted minor Luis Norberto Ginés Maldonado with the previous consent of his parents and ratification by the former District Court of Arecibo. In the deed of adoption it was stated: "That as a result and by virtue of this adoption, the adopter grants to the said adopted child the right to bear his surname and all such rights as the laws of Puerto Rico grant to the children as if they were born of a lawful marriage, with the limitations prescribed by the existing Civil Code, the adopter stating that he is in the full enjoyment of all his civil rights and that he has no legitimate, legitimized, or natural children of any kind, and that he is over 45 years of age."

The adopter, José Ayala Rodríguez, died on February 2, 1945, and his mother, Josefa Rodríguez Espino, was declared by order of August 24, 1945 of the former District Court of Arecibo "sole and universal heir ab intestato of her legitimate son, José Ayala Rodríguez." The said Josefa Rodríguez Espino had died on June 24, 1945, that is, before being declared universal and sole heir of her son. The defendants-appellees herein form the intestate succession of the said Josefa Rodríguez Espino, according to the declaration of the former District Court of Arecibo of December 5, 1945.

On October 2, 1952, the plaintiffs, Mariana Ginés and Luis Norberto Ayala Ginés, filed in the Superior Court of Puerto Rico, Arecibo Part, a civil action for recognition of their respective rights within the actual partnership created by the concubinage and by virtue of the adoption by the deceased, José Ayala Rodríguez.

On February 23, 1955, the trial court rendered judgment on both questions declaring, as respects Mariana Ginés, "That the work performed by Mariana Ginés to help her paramour, José Ayala Rodríguez, in the operation of his business, was justly offset by the property which the latter

recorded in her name when he purchased it from his brother [*sic*] Miguel by deed executed on April 10, 1942, and by the share which corresponded to her from the selling price of two urban properties situated in Manatí, as it appears from the deed executed on June 20, 1946," and as respects the adopted child, "that on the date of the adoption of Luis Norberto Ayala Ginés, the well-established rule of our Supreme Court was that the adoptee only had the right to the inheritance left upon the death of the adopter, provided the rights of the heirs qualified as legitimate or forced heirs were not prejudiced; but since in this case upon the death of José Ayala Rodríguez in 1945 there was an ascendant, namely, his mother Josefa Rodríguez Espino, the plaintiff did not acquire any right in the inheritance, if it were so recognized since the exclusive right of the said ascendant would have been prejudiced." It therefore dismissed the complaint.

In their petition for review before this Court, the plaintiffs-appellants assign the following error: (1) The respondent court "committed gross and manifest error of law in declaring that Luis Norberto Ayala Ginés, as adopted child, had no right to inherit from his father, José Ayala Rodríguez, upon the latter's death on February 2, 1945."

1. Regarding the question of the adopted child, the law applicable to the case is § § 132 and 133 of the Civil Code of 1930, which provided:

"Section 132.—Adoption shall in no case injure the rights belonging to forced heirs, which shall remain as though the adoption had not taken place.

"Section 133.—The person adopted shall enjoy in the family of the adopter the rights and duties and consideration of a legitimate child, with the exception noted in the preceding section."

In applying these two sections, the trial court relied on our previous interpretation of those sections in the decision in *Ex parte Lugo,* 64 P.R.R. 826, 828, and 833 (Todd, Jr. and

Travieso; De Jesús and Snyder, concurring; April 25, 1945).
This case, overruled to a certain extent our previous decisions
in the cases of *Ex parte Ortiz*, 42 P.R.R. 339, 341, and 344
(Wolf, 1931), and *Bardeguez v. Bardeguez*, 48 P.R.R. 692,
697 (Córdova Dávila, 1935). The case of *Ex parte Lugo*,
*supra*, was in turn overruled by *Sosa v. Sosa*, 66 P.R.R. 573,
584 (Córdova Díaz; Todd, Jr., dissenting; July 26, 1946).

In the cases of *Ex parte Ortiz* and *Bardeguez v. Barde-
guez*, *supra*, we arrived at the correct conclusion that the
adopted child was a real forced heir. Such conclusion is
absolutely correct, considering the civil kinship of agnatic
category produced by the adoption. In the last case of *Sosa
v. Sosa*, *supra*, we arrived at the conclusion that the adopted
child's right to inherit could not prejudice the preferential
right of the forced heirs.

Mr. Justice Roberto Todd, Jr., in dissenting from the
opinion of the majority in the last case of Sosa, in an opinion
of November 5, 1946, pp. 587–88, stated the following: "I
dissent from the opinion of the majority also, because al-
though the courts, in construing statutes, may, as stated by
Judge Holmes, legislate 'interstitially,' in my opinion they
should refrain from so doing whenever the statute is so defec-
tive as to require for its construction and application judicial
legislation every time a case comes up on said question. And
such is the case with the adopted children in Puerto Rico in
view of the decision that they are, in effect, legitimate chil-
dren or at least are regarded as their equals. In so far as
their hereditary portion is concerned, if the adopted child
is like a legitimate child, said portion should be uniform at
all instances. But such is not the case according to the opin-
ion of the majority. It depends on whether the forced heirs
are prejudiced and in order not to prejudice them the courts,
and not the law, then come into play to determine in each
case the amount of said portion. We have reached the max-
imum as to legislating judicially.

"Due to the changes that take place in this court—recently quite often—and the possibility of different opinions in the future as to the disputed and uncertain hereditary rights of adopted children, in the testate as well as in the intestate succession, it is my opinion that the Legislature of Puerto Rico should amend all those Sections of our code relating to adopted children in order to clearly define those rights. Otherwise, the uncertainty shall prevail and the courts shall continue legislating."

It seems that the Legislative Assembly of Puerto Rico was impressed by this urgent call to clarify the rule because six months later it enacted Act No. 353 of May 13, 1947 (Sess. Laws, p. 680), with immediate effect, declaring that "the person adopted shall enjoy in the family of the adopter the rights and duties and consideration of a legitimate child," and expressly repealing § 132, which established the rule that the adoption did not impair the rights of the forced heirs.

We therefore have before us what in civil law is known as a construing act, with implied retroactive effect, in force as of the date of the act thereby interpreted. I-1 Castán, *Derecho Civil, Común y Foral* 409 (9th ed. by *Instituto Editorial Reus*, 1955). As well stated by Castán, "it is not necessary that the retroactivity provision be express; it shall be sufficient if the purpose of the lawmaker appears evident from the meaning and purpose of the act."

On this same point, Puig Peña states as follows: "The formulation of the principle of irretroactivity never presupposes, as we have said, the impossibility that subsequent acts may have at times a retroactive character, affecting by their text the judicial relations arising under the former act. These exceptions to the retroactive principle arise in the following situations... (B) *Whenever the lawmaker makes laws which by their nature and essence presuppose the retroactivity.*—This occurs, above all, with the so-called *construing acts*, generally enacted to remove some doubt which may have

arisen in the application of the former text. This assumption, in fact, should not pose any problem since we are not concerned here with a contradiction between the former act and the construing act, but with a mere rule clarifying and explaining the former." II-1 Puig Peña, *Tratado de Derecho Civil Español* 440–41 (ed. by *Editorial Revista de Derecho Privado*, 1957).

As may be seen, in the case of a construing statute—that which clarifies some point of a former statute—the judge is not faced with a problem of application of an act but with a problem of interpretation. In the American law this is regarded as a search for the post legislative intention. We know the importance which in American law is attached to this post legislative intention—some times called legislative interpretation of a former statute—in determining the true scope of the original statute, particularly when it is almost contemporaneous with the contrary judicial construction. 2 Sutherland, Statutory Construction 526–28, § 5110.

Every rule in law has its history, its sense, its particular aura, and it is the judicial duty to extract its rationale from its origin. Originally, the adoption was one of the political, social, and even economic means employed by the patriciate to achieve the aggrandizement of their houses. Castán comments an exceptional case of adoption: that of Augustus who caused the Senate to proclaim him the adopted son of Julius Caesar in order to inherit the empire. Marcus Tulius—a prominent pseudonym almost forgotten in the Spanish juridical bibliography—comments another exceptional case of adoption, that of Don Sancho el Fuerte and Don Jaime el Conquistador, two kings who adopted each other in order to inherit each other and thus expand their privileges and prerogatives.

In Roman law the picture of agnation comprised all those persons foreign to the family, grouped around the *potestas* of the *paterfamilias*, such as the adopted children, the natural

children, and the wife. As a question of historical reality, the adopted children had a preferential right over the legitimate children in the father's inheritance.

Leyes de Partida sought to remedy the injustice which had been consecrated in the Roman law and in the feudal law against the legitimate children and in favor of the adopted children by providing for the concurrence of the adopted children (adoption) and the legitimate children in the father's inheritance. The Spanish Civil Code prohibited the adoption by those having legitimate or legitimized children, and if there were none, it prohibited the right of inheritance between the adopter and the adopted child, unless the adopting parent shall have agreed in the deed of adoption to institute the person adopted as his heir (§ 177).

Although our Code originally adopted the prohibition to adopt by those having legitimate or legitimized children, it did not adopt the prohibition of the adopted child to inherit from his adopter. Hence, § § 131 and 132 of our Code, as they stood in 1945, must be construed as recognizing the right of the adopted child to inherit. Since our Code did not permit the adoption by those having legitimate or legitimized children, the phrase employed in § 132, before the latter was repealed, to the effect that "adoption shall in no case injure the rights belonging to forced heirs, which shall remain as though the adoption had not taken place," is confined to the concurrence of the adopted child with the other agnates, namely, the duly acknowledged natural children and the widow, each with a fixed share and without exclusion in the successory order, and as respects this share and such exclusion in the successory order, it was necessary to maintain them in the same force as if the adoption had not taken place.

However, the only other forced heir is the adopter's mother, but she has no right in the successory order if there are legitimate children, and, incidentally, the status enjoyed by the adopted child, by civil kinship, expressly declared by

law, is that of a legitimate child, which excludes all other heirs with the exception of those considered as agnates. Our statute in 1945 did not prohibit the adoption whenever there were ascendants, but when there were legitimate or legitimized children. This shows that if there are living ascendants, the adopter could grant his civil kinship to the adopted child, and the latter would be entitled to the inheritance with the same right as a legitimate child. This conclusion is reaffirmed once again by the enactment of Act No. 353 of May 13, 1947, which by repealing § 132 eliminates every reference to the prejudice of the right of the forced heirs, which in our opinion is a legislative interpretation contrary to our criterion in the last case of *Sosa* v. *Sosa*, whereby we sought to exclude the adopted children from the legitimate share whenever they concurred with other forced heirs.

In view of the doctrinal complex formed by five opinions quite contradictory among themselves and of a quasi-contemporaneous construing act, in clear contradiction of the rule laid down by this Court in the last case of *Sosa* v. *Sosa*, we ought to lay down a new rule on this litigious question and declared that according to § § 132 and 133 of the Civil Code of Puerto Rico, as it stood in 1945, the status of an adopted child in the successory order is that of a legitimate child, with all the successory rights corresponding to a legitimate child, and that the phrase employed in § 132 in the sense that "the adoption shall in no case injure the rights belonging to forced heirs," does not import an exclusion of the legitimate right to the inheritance of the adopting parent whenever there are forced ascendants, but a concurrence to the inheritance with the legitimized natural children and the widow, and that the shares of the latter in the inheritance would be the same as if the adoption had not taken place.

It is clear that the purpose of the modern legislation on adoption is to eliminate the privilege of sole heir enjoyed by

the adopted child as against the legitimate children of the adopter, permitting the concurrence of the adopted child, as another child, with the other legitimate children—case of Puerto Rico, Act No. 100 of May 6, 1948 (Sess. Laws, p. 228), and Act No. 86 of June 15, 1953 (Sess. Laws, p. 304)—and with the acknowledged natural and illegitimate children and the widow.

This being so, there is no question that the trial court erred in applying the case of *Ex parte Lugo, supra,* and denying to the adopted child the right to inherit the entire hereditary estate, to the exclusion of the adopter's mother.

---

MR. JUSTICE SANTANA BECERRA, dissenting.

I conceive in this case a situation in which the adopted child receives the entire inheritance, as concluded by the distinguished, brother, Mr. Justice Belaval, in an opinion in which I concur. I conceive that the inheritance could correspond in its entirety to the predecessor's mother, as concluded by the trial court based on our authorities. It would not displease me if it were divided between the adopted child and the mother, which under the circumstances of this case was in fact for the enjoyment of the predecessor's brothers, but I fail to find a provision of law which in my opinion would permit such partition.

Section 132 of the Civil Code (1930 ed.), which was in force until May 13, 1947, provided:

"Adoption shall in no case injure the rights belonging to forced heirs, which shall remain as though the adoption had not taken place."

Section 133 until that date also provided:

"The person adopted shall enjoy in the *family* of the adopter the rights and duties and consideration of a legitimate child, with the exception noted in the preceding section." (Italics ours.)

There is not the least doubt that the protection which §§ 132 and 133 afforded to the forced heirs in connection with the adopted child covered the *testate* forced heir as well as the *intestate*.

This Court delved into this question in the first and second cases of *Sosa* v. *Sosa*, 64 P.R.R. 732 (1945), and 66 P.R.R. 573 (1946), and between those cases, in *Ex parte Lugo*, 64 P.R.R. 826 (1945). The two *Sosa* cases are not applicable directly to the case at bar, since they involved a *testate* succession, and, also, the adopted child concurred with the *natural descendants*, not with ascendants. Being a *testate* succession, in those cases the *forced* legal portion of the natural children who were forced heirs only constituted part of the *testate* inheritance, and a share in the inheritance could be recognized to the adopted child without violating § 132, without injuring the rights of the forced heirs.

The case directly in point is that of Lugo in which, as here, the inheritance was *intestate*, and, as here, the adopted daughter concurred with the *ascendant* mother and with the widow in the widow's usufruct, a thing which does not affect.

This being an *intestate* succession, the nearest of kin excludes the most remote—§ 884 of the Civil Code—but the degree which is not excluded inherits in the *entire* inheritance and not on the basis of partial *forced legal portions*, as in the case of the *testate* succession.

That is why in the *Lugo* case in which the Court in full concurred, we gave nothing to the adopted daughter and gave everything to the mother, subject in that case to the widow's usufruct, because no share could be recognized to the adopted daughter in that *intestate* succession in which there are no partial legal portions, without affecting the right of that mother as forced heir to the entire inheritance. So far the trial court decided properly according to those authorities.

I believe that the situation created by our decisions in the two *Sosa* cases left the problem of the rights of adopted chil-

dren under § § 132 and 133, as they stood at that time, in an area of great uncertainty by a divided Court. That is why I agree with my brother, Mr. Justice Belaval, that Act No. 353 of May 13, 1947, enacted by the Legislative Assembly immediately following our second decision in *Sosa* recommending legislative action, and which repealed § 132 and amended § 133, had the effect of a *declaration* of the lawmaker as to which were the rights of the adopted child. I therefore believe that that Act was applicable to the case at bar even though the predecessor died before its enactment, because it was already in force when this action was decided. If this interpretation of Act No. 353 is not accepted, it would then be proper, on the basis of the *Lugo* case, to award the inheritance in its entirety to the mother, but I am unable to find any statutory precept or decision of this Court which would permit its partition, since the succession, as I have said, is *intestate*.